RAYOVAC CORPORATION v DEPARTMENT OF TREASURY

Docket No. 251283. Submitted November 9, 2004, at Lansing. Decided November 23, 2004, at 9:15 a.m.

Rayovac Corporation brought an action in the Court of Claims against the Michigan Department of Treasury, seeking to avoid paying the Michigan single business tax (SBT) for the period July 1, 1989, through June 30, 1993, a period during which Rayovac, a Wisconsin corporation, employed a small sales staff in Michigan. The court, William E. Collette, J., granted summary disposition for the plaintiff on the basis that the sales staff in Michigan was too small to create a substantial nexus between the corporation and the state, and, thus, the imposition of the SBT on the plaintiff violated the Commerce Clause of US Const, art I, § 8, cl 3. The department appealed, arguing that any staff in Michigan consti- tutes a substantial nexus greater than a slightest presence and that the imposition of the SBT on the plaintiff does not violate the Commerce Clause. The plaintiff cross-appealed, arguing that ret- roactive application of the SBT discriminates against or unconsti- tutionally burdens interstate commerce, that the defendant should be estopped from retroactively applying a new rule created by case law contrary to its administrative revenue bulletins advising taxpayers of departmental rules, and that the department is prevented by the doctrine of laches from retroactively applying the SBT.

The Court of Appeals *held*:

1. The substantial nexus test, which, when met, makes a corporation doing certain types of business in Michigan subject to the single business tax, is a bright-line test as described in *Quill Corp v North Dakota*, 504 US 298 (1992), and as applied in Michigan. Under the test, any sales force presence in Michigan satisfies the test. Any other approach would negate the bright-line rule and invite chaos from attempts to differentiate "slightest presence" from "substantial nexus." Business activity, which the SBT taxes, includes the transfer of legal or equitable title to property, real or personal and tangible or intangible, within this state and for the purpose of gain, which is precisely what the Michigan sales staff of the plaintiff is employed to do.

2. The retroactive application of the SBT for the tax years at issue does not discriminate against or unconstitutionally burden interstate commerce. The department is not estopped from retroactively applying the new rule created by case law merely by dint of having published administrative bulletins discussing what the administrative rule was at the time issued. Laches does not apply because the plaintiff cannot show a hardship as a result of the delay.

Reversed and remanded for entry of summary disposition for the defendant.

TAXATION — SMALL BUSINESS TAX — SUBSTANTIAL NEXUS.

The substantial nexus test, which, when met, requires a corporation doing certain types of business in Michigan to be subject to the single business tax, is a bright-line test under which any sales force presence in Michigan satisfies the test (MCL 208.1 *et seq.*).

*Honigman Miller Schwartz and Cohn LLP* (by *Patrick R. Van Tiflin, June Summers Haas*, and *Daniel L. Stanley*) for the plaintiff.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Glenn R. White*, Assistant Attorney General, for the Department of Treasury.

Before: DONOFRIO, P.J., and MARKEY and FORT HOOD, JJ.

PER CURIAM. Defendant Department of Treasury appeals by right the trial court's order granting summary disposition for plaintiff Rayovac Corporation, holding that Rayovac was not liable for payment of the Michigan single business tax (SBT), MCL 208.1 *et seq.*, for the period July 1, 1989, through June 30, 1993. Plaintiff cross-appeals the same order. We reverse.

The trial court ruled that the Commerce Clause, US Const, art I, § 8, cl 3, prohibited defendant from collecting the SBT from plaintiff, a Wisconsin seller of batteries in Michigan, because plaintiff's Michigan sales staff

was too small to create a "substantial nexus" between the corporation and Michigan. The court noted that the presence in Michigan of three salespersons and one midwestern manager, who solicited, but did not accept or approve, orders, did not provide the required substantial nexus. Defendant argues that plaintiff's sales staff need not be substantial to create a sufficient nexus between it and Michigan so as to permit the imposition of the SBT. We agree.

We review de novo the issues presented, both because summary disposition was granted and because the issues exclusively involve statutory and constitutional interpretation. *Studier v Michigan Pub School Employees' Retirement Bd*, 260 Mich App 460, 467; 679 NW2d 88 (2004); *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 507; 667 NW2d 379 (2003).

In *Gillette v Dep't of Treasury*, 198 Mich App 303; 497 NW2d 595 (1993), this Court addressed when defendant may assess the SBT on the sales activity of a nonresident company in the face of a claim that the assessment violates the Due Process Clause or the Commerce Clause. Due process requires a definite link, or some minimum connection, between the state and the entity or transaction it seeks to tax. *Gillette, supra* at 311-312, citing *Quill Corp v North Dakota*, 504 US 298, 306; 112 S Ct 1904; 119 L Ed 2d 91 (1992). Here, the parties recognize that plaintiff maintained sufficient contacts with Michigan to satisfy Fourteenth Amendment due process requirements. But, "[a] tax that withstands a due process challenge will not necessarily withstand a Commerce Clause challenge." *Gillette, supra* at 313. The Commerce Clause "prohibits discrimination against interstate commerce . . . and bars state regulations that unduly burden interstate commerce." *Quill, supra* at 312.

We agree with the trial court that if the SBT imposed here survives scrutiny under the Commerce Clause it will resolve the issues presented in this case. "A tax will sustain a Commerce Clause challenge when it: (1) is applied to an activity with a substantial nexus with the taxing state, (2) is fairly apportioned, (3) does not discriminate against interstate commerce, and (4) is fairly related to the services provided by the state." *Gillette, supra* at 313, citing *Complete Auto Transit, Inc v Brady,* 430 US 274, 279; 97 S Ct 1076; 51 L Ed 2d 326 (1977), and *Caterpillar, Inc v Dep't of Treasury,* 440 Mich 400, 415; 488 NW2d 182 (1992).

In *Quill,* the United States Supreme Court reaffirmed its holding in *Nat'l Bellas Hess, Inc v Illinois Dep't of Revenue,* 386 US 753, 758; 87 S Ct 1389; 18 L Ed 2d 505 (1967), that an out-of-state seller whose only contacts within the taxing state were by mail or other common carrier lacked the "substantial nexus" required by the Commerce Clause. *Quill, supra* at 312. The Court noted that the Commerce Clause draws a sharp distinction between sellers who have a physical presence in the taxing state and those who do not. *Id.* at 311-312, citing *Nat'l Geographic Society v California Bd of Equalization,* 430 US 551, 559; 97 S Ct 1386; 51 L Ed 2d 631 (1977). The bright-line physical presence requirement of *Bellas Hess* furthers the purpose of the Commerce Clause by prohibiting undue burdens on interstate commerce and creating a safe harbor for vendors who only market their products to customers in the taxing state by common carrier or the United States mail. *Quill, supra* at 314-315. Thus, whether a state may impose a tax on an out-of-state seller "may turn on the presence in the taxing State of a small sales force, plant, or office." *Id.* at 315; see, also, *Gillette, supra* at 313.

Although *Quill* established a bright-line test to determine when a substantial nexus does not exist (when a vendor's only contact with a state is through mail order or common carrier), it left open how much physical presence is necessary to satisfy the Commerce Clause. See *Magnetek Controls, Inc v Dep't of Treasury,* 221 Mich App 400, 407 n 5; 562 NW2d 219 (1997). The "slightest presence" of an out-of-state seller in the taxing state is insufficient to meet a standard of *substantial nexus. Quill, supra* at 315 n 8. So, Quill's licensing of software and "the existence in North Dakota of a few floppy diskettes to which Quill holds title" did not provide the "substantial nexus" required by the Commerce Clause. *Id.* But this Court found a substantial nexus existed when a nonresident seller had "a sales staff of at least eighteen full-time sales representatives located in Michigan, it had an ownership interest in promotional and replacement merchandise located in Michigan, [and] leased automobiles for its sales representatives in Michigan . . . ." *Gillette, supra* at 314.

Of course, plaintiff's contacts with Michigan are much less than those found sufficient to satisfy the Commerce Clause in *Gillette.* The question we must decide is whether plaintiff's Michigan sales staff of four is only the "slightest presence" insufficient to satisfy the Commerce Clause, or the "small sales force" the Supreme Court noted would be sufficient to provide a "substantial nexus" to a taxing state. We find this Court's analysis in *Magnetek,* albeit of a different fact situation, to be instructive. The *Magnetek* Court reasoned that *Quill* should be interpreted to preserve the bright-line rule by not giving any consideration to the substantiality of the physical presence of the sales force and, instead, finding that the presence of any sales force at all provides "more than a 'slightest presence' in [a]

state[]," so that the substantial nexus will be found. *Magnetek, supra* at 410-412, citing *In re Orvis Co, Inc v Tax Appeals Tribunal of the State of New York,* 86 NY2d 165, 176-178; 654 NE2d 954 (1995). Any other approach would negate the bright-line rule and invite chaos from a lack of certainty regarding precisely what size or character of a sales force would meet the standard. *Magnetek, supra* at 410, citing *Orvis, supra* at 177.

Plaintiff argues that *Magnetek* is inapposite because it addressed whether a Michigan company is immune from the SBT for that portion of its sales outside the state. We disagree. The nature of Magnetek's contacts with other states was important because its sales to customers in states where Magnetek "is not taxable" are considered to be Michigan sales for the purpose of the SBT. MCL 208.52(c); *Magnetek, supra* at 404. To avoid the SBT, Magnetek would have to be subject to the other state's taxing jurisdiction "regardless of whether, in fact, the state does or does not" impose a tax. MCL 208.42; *Magnetek, supra* at 404. Accordingly, the constitutional question presented in *Magnetek* is identical to the constitutional question here: whether an out-of-state seller has sufficient contacts with another state to satisfy the "substantial nexus" requirement of the Commerce Clause permitting the other state to tax the out-of-state seller. Moreover, we find the reasoning of *Magnetek* persuasive without regard to whether it is deemed to control this case pursuant to MCR 7.215(C)(2).

We reject plaintiff's argument that the statutory definition of "business activity" creates an additional jurisdictional limit restricting the imposition of the SBT. MCL 208.31(1) imposes "a specific tax upon the adjusted tax base of every person with business activity in this state that is allocated or apportioned to this

state" at a specified percentage. See *Trinova Corp v Dep't of Treasury,* 433 Mich 141, 149-153; 445 NW2d 428 (1989), and *Gillette, supra* at 308-310. Pertinent to plaintiff's argument, MCL 208.3(2) defines "business activity" as

> a transfer of legal or equitable title to or rental of property, whether real, personal, or mixed, tangible or intangible, or the performance of services, or a combination thereof, made or engaged in, or caused to be made or engaged in, within this state, whether in intrastate, interstate, or foreign commerce, with the object of gain, benefit, or advantage, whether direct or indirect, to the taxpayer or to others, *but shall not include the services rendered by an employee to his employer* . . . . [Emphasis added.]

Plaintiff's argument fails because its Michigan sales representatives were engaged in arranging the transfer of legal or equitable title of property "with the object of gain, benefit, or advantage" to plaintiff. Plaintiff's personnel within this state conducted "business activity," creating a substantial nexus for the purpose of imposing the SBT. See *Gillette, supra* at 314; see, also, MCL 208.52(a) which provides: "Sales of tangible personal property are in this state [if] . . . the property is shipped or delivered to a purchaser . . . within this state . . . ."

We conclude that the activity of plaintiff's sales personnel within this state established a substantial nexus with this state under the *Quill* Court's "bright-line" rule as clarified by *Magnetek.* Indeed, the nexus here is considerably more substantial than that in *Magnetek,* in which the seller's only contacts with the potential taxing states at issue were the presence of a "general manager and product-line sales managers [expending] at least ten business days or two weeks of 'solid effort' annually" in those states. *Magnetek, supra* at 405. Of course, under the *Quill* bright-line rule, the

comparative extent of contacts establishing a substantial nexus is not significant, provided those contacts are more than the "slightest presence." *Id.* at 411.

Our disposition of this issue renders unnecessary our consideration of the two remaining issues defendant raises.

With regard to plaintiff's cross-appeal, we disagree with its assertion that the trial court entered summary disposition in favor of defendant on the majority of its claims. In fact, the trial court's order reveals that, in granting summary disposition for plaintiff and denying summary disposition to defendant, the trial court focused on whether a sufficient nexus existed between plaintiff and Michigan to permit defendant to impose the SBT. The Court found that plaintiff's alternative arguments lacked merit. This did not constitute an entry of summary disposition for defendant.

We agree with the trial court that the issues plaintiff raised below and on cross-appeal do not provide an alternative basis for granting summary disposition in its favor. The retroactive application of the SBT for the tax years at issue does not discriminate against or unconstitutionally burden interstate commerce. See *Harper v Virginia Dep't of Taxation*, 509 US 86; 113 S Ct 2510; 125 L Ed 2d 74 (1993); *Syntex Laboratories v Dep't of Treasury*, 233 Mich App 286; 590 NW2d 612 (1998). Moreover, defendant is not estopped from retroactively applying the new rule created by case law simply because it had issued revenue administrative bulletins advising taxpayers of what the then-applicable rule was.[1] Contrary to what plaintiff asserts, defendant

---

[1] Plaintiff also incorrectly argues that defendant was required by MCL 24.203(6) to follow its earlier statements of the law as set out in the revenue administrative bulletins. MCL 24.203(6) is part of the Administrative Procedures Act, which does not apply to revenue administrative

did not "bait and switch." Cf. *Newsweek, Inc v Florida Dep't of Revenue,* 522 US 442; 118 S Ct 904; 139 L Ed 2d 888 (1998). In addition, plaintiff has no vested right to continued application of a particular taxing standard, so it cannot claim that imposition of the SBT constitutes unfair and unjust treatment. *Syntex Laboratories, supra* at 293. Finally, defendant was not barred by the doctrine of laches from retroactively applying the SBT because plaintiff cannot show hardship as a result of the delay. See *Speaker-Hines & Thomas, Inc v Dep't of Treasury,* 207 Mich App 84, 91; 523 NW2d 826 (1994), and *Amway Corp v Dep't of Treasury,* 176 Mich App 285, 294-295; 438 NW2d 904 (1989), vacated in part and remanded on other grounds 433 Mich 908 (1989).

We reverse and remand for entry of summary disposition in favor of defendant. We do not retain jurisdiction.

bulletins. The revenue division act at MCL 205.3(f) authorizes the bulletins, and nothing in that act makes them binding on defendant in the face of contrary judicial decisions.