BIANCO, J.T.C.
This is the court’s determination regarding the Summary Judgment motion filed by plaintiff, Home Impressions, Inc. (hereinafter “Home Impressions”), and the cross motion for Summary Judgment filed by defendant, Director, Division of Taxation (hereinafter “the Director”).
Home Impressions seeks to set aside the Director’s Final Determination issued on November 7, 2002, which found that Home Impressions was subject to the New Jersey Corporation Business Tax Act, N.J.S.A. 54:10A-1 to -40, (hereinafter “the Act”) and was required to file tax returns and remit the minimum tax in accordance with the Act, commencing June 1, 1995 (plus any applicable penalties and interest). N.J.S.A. 54:10A-5(e).
Home Impressions is a for-profit corporation incorporated under the laws of the State of North Carolina that manufactures and sells mailboxes and mailbox posts. Home Impressions’ principal place of business is in North Carolina; it does not own or rent property, or maintain an office within the State of New Jersey. Home Impressions solicits orders for its products in New Jersey through independent contractors who operate as salespeople within the state. Orders taken by these independent contractors (or salespeople) are forwarded to North Carolina for approval and shipped from Home Impressions’ distribution center in Virginia.
On April 20, 2000 the Director sent Home Impressions a letter stating that it had come to the Director’s attention that Home Impressions “may be engaged in activity with individuals or businesses located within the State of New Jersey that may subject them to one or more state taxes.” In that letter, the Director also requested that Home Impressions complete a Nexus Survey[1] and submit the same to the Director within 45 days. *452 Home Impressions completed the Nexus Survey and returned it to the Director on or about June 7, 2000.
On July 3, 2000, the Director sent Home Impressions a Proposed Determination[2] that concluded:
In accordance with the provisions of the New Jersey Corporation Business Tax Act (N.J.S.A. 54:10A-et seq.) and Regulations (N.J.A.C. 18:7-1.6 thru 18:7-1.11), this Company is doing business in New Jersey by performing the following in-state (New Jersey) activities:
The solicitation of sales in New Jersey by employees, agents, independent contractors or representatives.
Accordingly, this company is subject to the New Jersey Corporation Business Tax Act commencing June 1, 1995 and is required to file tax returns as follows:
Return Year For Period Ending
1995 May 31, 1996
thru
1998 May 31,1999
After Home Impressions’ written response to the Proposed Determination, the Director issued Formal Notice to Home Impressions, in a letter dated September 22, 2000, confirming the obligation of Home Impressions under the Act to file tax returns commencing June 1,1995 through May 31,1999.
On December 20, 2000, Home Impressions filed a protest with the Director claiming that the sole activity of its independent contractors, retained during the period in issue, was the solicitation of orders for sales of tangible personal property. These orders were sent outside the State of New Jersey for approval or rejection by Home Impressions and, if approved, were filled by shipment or delivery from a point outside the State of New Jersey. This activity, Home Impressions argues, is specifically precluded from taxation under the Act by Pub.L. 86-272 (codified as 15 U.S.C.A. § 381 to 384 but generally referred to as Pub.L. 86-272) which provides in pertinent part that:
*453 No State ... shall have power to impose, ... a net income tax on the income derived within such State by any person from interstate commerce if the only business activities within such State by or on behalf of such person ... [is].. .the solicitation of orders by such person or his representative, in such State for sales of tangible personal property, which orders are sent outside the State for approval or rejection, and, if approved, arc filled by shipment or delivery from a point outside the State...
[15 U.S.C.A. § 381(a) (emphasis added).].
After a hearing was held pursuant to the protest filed by Home Impressions, the Director issued a Final Determination on November 7, 2002, finding that Home Impressions was subject to the Act and its minimum tax. This appeal followed. Home Impressions moved, and the Director cross-moved, for summary judgment.
When deciding a motion for summary judgment under R. 4:46-2, the court must determine whether a genuine issue as to any material fact exists. To do this, it must be determined “whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.” Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523, 666 A.2d 146 (1995). In this case, the court is not presented with a question of disputed material fact, but rather with a question of law. Accordingly, the court finds that the case is ripe for Summary Judgment. R. 4:46-2(c).
The Act imposes a franchise tax on domestic corporations and nonexempt foreign corporations. N.J.S.A. 54:10A-2. The Act provides in relevant part that:
Every domestic or foreign corporation which is not hereinafter exempted shall pay an annual franchise tax for each year, as hereinafter provided, for the privilege of having or exercising its corporate franchise in this State, or for the privilege of deriving receipts from sources •within this State, or for the privilege of engaging in contacts within this State, or for the privilege of doing business, employing or owning capital or property, or maintaining an office, in this State. And such franchise tax shall be in lieu of all other State, county or local taxation upon or measured by intangible personal property used in business by corporations liable to taxation under this act____
A taxpayer’s exercise of its franchise in this State is subject to taxation in this State if the taxpayer’s business activity in this State is sufficient to give this State *454 jurisdiction to impose the tax under the Constitution and statutes of the United States.
[N.J.S.A. 54:10A-2 (emphasis added).].
For the tax years in question, 1995 through 1999, N.J.S.A. 54.10A-5 (1993) (amended by L. 1995, c. 246, § 1; L. 1997, c. 40, § 1, eff. March 27, 1997; L. 2001, c. 23, § 1, eff. Feb. 2, 2001; L. 2001, c. 136, § 2, eff. June 29, 2001; L. 2002, c. 40, § 6, eff. July 2, 2002), provided in pertinent part that:
The franchise tax to be annually assessed to and paid by each taxpayer shall be ... the sum of the amount computed under subsection (a) hereof, or in the alternative to the amount computed under subsection (a) hereof, the amount computed under subsection (f) hereof, and the amount computed under subsection (e) hereof:
(c) (1) For a taxpayer that is not a New Jersey S Corporation, 3 ¡4 % of its entire net income or such portion thereof as may be allocable to this State as provided in section 6 of P.L.1945, c. 162 (C.54:10A-6) plus such portion thereof as is specifically assigned to this State as provided in section 5 of P.L.1993, c. 173 (C.54:10A-6.1); provided, however, ... that with respect to reports covering privilege periods or parts thereof ending after December 31, 1979, the rate shall be 9%; provided however, that for a taxpayer that has entire net income of $100,000 or less for a privilege period and is not a partnership the rate for that privilege period shall be 7¡é % and provided further that for a taxpayer that has entire net income of $50,000 or less for a privilege period and is not a partnership the rate for that privilege period shall be %____
(e) The tax assessed to any taxpayer pursuant to this section shall not be less than $25 in the case of a domestic corporation, $50 in the case of a foreign corporation, or $250 in the case of an investment company or regulated investment company. Provided however, that for privilege periods beginning in calendar year 1994 and thereafter the minimum taxes for taxpayers other than an investment company or a regulated investment company shall be as. provided in the following schedule:
Period Beginning Domestic Corporation Foreign Corporation
In Calendar Year Minimum Tax Minimum Tax
1994 $ 50 $100
1995 $100 $200
1996 $150 $200
1997 $200 $200
1998 $200 $200
1999 $200 $200
2000 $200 $200
2001 $210 $210
[N.J.S.A. 54:10A-5.]
Home Impressions argues that its actions inside the State of New Jersey are only acts of solicitation within the meaning of *455 Pub.L. 86-272 and, therefore, Home Impressions cannot be subject to the Act because it conflicts with federal law.
In determining the question of whether the Act conflicts with Pub.L. 86-272, both parties have argued whether, under the facts of this case, the tax can survive scrutiny under the Commerce Clause and the Due Process Clause of the Federal Constitution.
To that argument, the United States Supreme Court in Quill Corp. v. North Dakota, 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992), examined the state’s power to impose the obligation on foreign vendors to collect sales or use taxes on sales into North Dakota under both the Due Process Clause and the Commerce Clause. While the two clauses are closely related, there are distinct differences that limit the state’s power to tax. Quill, 504 U.S. at 305, 112 S.Ct. at 1909, 119 L.Ed.2d. at 101. Accordingly, a tax that may be valid under the Due Process Clause could be invalid under the Commerce Clause. Ibid.
It has been established that a state may assert personal jurisdiction and survive a due process analysis if the defendant has minimum contacts within the taxing state. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Physical presence in the jurisdiction is not required to establish minimum contacts under this analysis. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).[3] Instead, there must be some “definite link” in order to establish minimum contact. Quill, supra, 504 U.S. at 306, 112 S.Ct. at 1909, 119 L.Ed.2d at 102. In Quill, the court found minimum contacts when a seller “engaged in continuous and widespread solicitation of business within a State.” Quill, 504 U.S. at 308, 112 S.Ct. at 1911, 119 L.Ed.2d at 104. In addition, the court stated:
Due process centrally concerns the fundamental fairness of governmental activity. Thus, at the most general level, the due process nexus analysis requires that we *456 ask whether an individual’s connections with a State are substantial enough to legitimate the State’s exercise of power over him.
[Quill, 504 U.S. at 312, 112 S.Ct. at 1913, 119 L.Ed.2d at 106].
The present case involves the solicitation of orders by independent contractors in New Jersey retained by Home Impressions, a foreign corporation. It appears to this court that Home Impressions’ activities in New Jersey do amount to the “continuous and widespread solicitation of business [in this state]” within the meaning of Quill. According, the court finds that Home Impressions’ activities in New Jersey satisfy the minimum contacts required under the Due Process Clause.
In Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), the U.S. Supreme Court provided a four-part test to determine whether the imposition of a tax is prohibited under the Commerce Clause. The action will be sustained if the tax:
[1] is applied to an activity with a substantial nexus with the taxing State, [2] is fairly apportioned, [3] does not discriminate against interstate commerce, and [4] is fairly related to the services provided by the State.
[Complete Auto, 430 U.S. at 279, 97 S.Ct at 1079, 51 L.Ed.2d at 331 (emphasis added).].
The question in this case is whether Home Impressions’ activities created a substantial nexus within the State.[4] This requirement is not the same as the Due Process requirement of minimum contacts. Quill, supra, 504 U.S. at 313, 112 S.Ct. at 1913, 119 L.Ed.2d at 107. Rather, in order to support a finding of substantial nexus, physical presence in the taxing state must be established.[5] Quill, supra, 504 U.S. at 311, 112 S.Ct. at 1912, 119 L.Ed.2d at 106.
*457 The New Jersey Tax Court recently determined that New Jersey may not subject a foreign corporation to the Act when the corporation merely collects licensing fees from its clients for use of such intangible property as trademarks, since intangible property alone is not tantamount to having a physical presence in the State. Lanco v. Director, Div. of Taxation, 21 N.J.Tax 200 (Tax 2003). Following the standard in Quill (which addressed sales and use taxes), the Tax Court in Lanco held that a physical presence is also required for “a state income or franchise tax.” Id. at 207. This court agrees, however, it is noted that the facts which led to the court’s finding of a lack of physical presence in Lanco are significantly different from the present case, where independent contractors solicit orders in New Jersey from potential customers of Home Impressions’ products.
In line with the present facts, the U.S. Supreme Court in Scripto, Inc. v. Carson, 362 U.S. 207, 80 S.Ct. 619, 4 L.Ed.2d 660 (1960), upheld the requirement that an out of state vendor must collect a use tax based upon the fact that the seller’s in-state solicitation was performed by independent contractors who had a physical presence within the State. See Rylander v. Bandag Licensing Corp., 18 S.W.3d 296, 297-98 (Tex.App.2000) (where the Texas Court of Appeals held that a company that only solicited sales in the taxing state and did not rely on salespeople or independent contractors within the state did not conduct enough activity to create a franchise tax nexus.). See also Clairol Inc. v. Pennsylvania, 513 Pa. 74, 518 A.2d 1165, 1166 (1986) (where the *458 Pennsylvania Supreme Court found that a company soliciting sales while employing four district managers and thirty-one salespeople in the taxing state subjected itself to a franchise tax.)
In the present case, Home Impressions contracts with independent contractors within the taxing state. The fact that these independent contractors are not traditional employees, however, is not a distinction of any constitutional significance. Scripto, supra, 362 U.S. at 211, 80 S.Ct. at 621-22, 4 L.Ed.2d at 664. “The formal shift in the contractual tagging of the salesman as ‘independent’ neither results in changing his local function of solicitation nor bears upon its effectiveness in securing a substantial flow of goods into [this state].” Ibid. “The showing of a sufficient nexus cannot be defeated by the argument that the taxpayer’s representative was properly characterized as an independent contractor rather than an agent.” Tyler Pipe Indus, v. Washington State Dep’t of Revenue, 483 U.S. 232, 107 S.Ct. 2810, 97 L.Ed.2d 199 (1987). Here, the court finds that the physical presence of the Home Impressions’ independent contractors within New Jersey constitutes a substantial nexus required by the Commerce Clause.
Having addressed the constitutional arguments raised under Due Process Clause and the Commerce Clause, the court now turns to the applicability of the Act in relation to Pub.L. 86-272. Home Impressions argues that the corporation business tax (hereinafter “CBT”) imposed by the Act conflicts with Pub.L. 86-272 in that, the CBT is measured by net income and is therefore invalid.
For the years in question the tax imposed by the Act was measured by a percentage of the taxpayer’s net income or a flat minimum tax, whichever was greater. N.J.S.A. 54:10A-5. By the Act’s own terms, the CBT is a franchise tax intended to reach foreign corporations doing business[6] in New Jersey “as far as *459 could constitutionally be done.” Roadway Express, Inc. v. Director, Div. of Taxation, 50 N.J. 471, 483, 236 A.2d 577 (1967). There is no dispute here that Home Impressions has performed business activities in the State of New Jersey through the solicitation of orders. Under the Act and N.J.A.C. 18:7-1.6 thru 18:7-1.11, a company is doing business in New Jersey when it solicits sales in New Jersey by using employees, agents, independent contractors or representatives. Furthermore, our Supreme Court has determined that a franchise tax may be properly applied to an exclusively interstate business. Roadway Express, supra, 50 N.J. at 485, 236 A.2d 577.
Home Impressions contends, however, that the protections afforded by Pub.L. 86-272 should also apply to the minimum flat tax that may be levied on foreign corporations under the Act. Home Impressions points to the income reporting requirements of the Act claiming that the minimum flat tax is really based on income regardless of its label as a franchise tax. The Director argues that the protection does not apply here because the flat tax is not measured as a percentage of net income.
New Jersey recognized the applicability of and protections afforded by Pub.L. 86-272 in N.J.AC. 18:7-1.9(d) which states:
If the only business activity of a foreign corporation within New Jersey consists of the solicitation of orders for sales of its tangible personal property, which orders are to be sent outside the State for acceptance or rejection and, if accepted, are to be filed [sic] by shipment or delivery from a point outside the State, then such corporation is doing business in New Jersey and is subject to the tax. Unless it has additional contacts with New Jersey, however, it will not be liable for any tax *460 measured by the income of the corporation. (See P.L. 86-272, 15 U.S.C. § 381). The corporation will be liable for filing a return and payment of the minimum tax.
[N.J.A.C. 18:7-1.9(d) (emphasis added).]
Home Impressions relies on the Tax Court’s decision in Pomco Graphics, Inc. v. Director, Div. of Taxation, 13 N.J.Tax 578 (Tax 1993) where the court found that a company that only solicits sales in New Jersey could not be taxed under the Act with respect to its net income. The Pomco Graphics decision echoed the legislative intent of the law and held that, without additional contact, a tax measured by net income, could not be imposed. Pomco Graphics, supra, 13 N.J.Tax at 578. See also, Wisconsin Dep’t of Revenue v. William Wrigley, Jr. Co., 505 U.S. 214, 232, 112 S.Ct. 2447, 2458, 120 L.Ed.2d 174, 191 (1992) (holding that the applicability of Pub.L. 86-272 “depends upon whether that activity establishes a nontrivial additional connection with the taxing State.”); and Gillette Co. v. State Tax Comm’n, 56 A.D.2d 475, 393 N.Y.S.2d 186 (1977), aff'd, 45 N.Y.2d 846, 410 N.Y.S.2d 65, 382 N.E.2d 764 (1978) (finding that more than mere solicitation is needed to overcome the exemption of Pub.L. 86-272).
This court however, need not address whether additional contacts exist so as to overcome the applicability of and protections afforded by Pub.L. 86-272, as the claims here do not involve an assessment based directly on the net income of Home Impressions. The more narrow issue, and the only issue in controversy before this court is whether, as Home Impressions’ claims, the minimum flat tax is a tax based on net income.[7] To that issue, the court notes that Pomco Graphics, upon which Home Impressions significantly relies, does not address whether Pub.L. 86-272 protects foreign businesses from the minimum flat tax of the Act.
Before the introduction of the flat tax (as an alternative under the Act), the CBT was measured by both net income and net worth. In Tamko Asphalt Products, Inc. v. Glaser, 5 N.J.Tax 446 *461 (Tax 1983), the taxpayer argued that Pub.L. 86-272 prohibited the imposition of the CBT on corporations engaged only in the solicitation of orders within New Jersey. The Tax Court found that (1) the taxpayer was engaged in more than mere solicitation, and (2) the protection of Pub.L. 86-272 was limited to taxes that measured only net income and therefore the statute did not apply to that portion of the Act that was measured by net worth.[8] Id. at 456. See also, Clairol, Inc. v. Kingsley, 109 N.J.Super. 22, 28, 262 A.2d 213 (App.Div.), aff'd o.b., 57 N.J. 199, 270 A.2d 702 (1970) (holding that Pub.L. 86-272 only applies to taxes on or measured by net income, and thus had no effect on the net worth portion of the tax.)
The Act’s tax reporting requirements permit the Division of Taxation to identify the activities of corporations doing business in New Jersey by examining their accounting records on a report. N.J.S.A. 54:10A-15(c). Merely imposing a reporting requirement on out-of-state corporations does not conflict with Pub.L. 86-272. Associates Consumer Disc. Co. v. Bozzarello, 149 N.J.Super. 358, 373 A.2d 1016 (App.Div.1977). See also Gillette Co. v. Department of Treasury, 198 Mich.App. 303, 497 N.W.2d 595 (1993), appeal denied, 445 Mich. 861, 519 N.W.2d 156, cert. den., 513 U.S. 1103, 115 S.Ct. 779, 130 L.Ed.2d 673 (1995) (holding that Pub.L. 86-272 was not applicable to its corporate tax because it was not measured by net income although “business income” was a starting point for calculation of the tax base.)
In this case, the Director is using the activity of the Home Impressions in New Jersey as a reporting requirement under the Act and not as a means of calculating the amount of the minimum fiat tax due. Accordingly, the court finds that the protections afforded by Pub.L. 86-272 do not protect foreign corporations from the minimum flat tax imposed under the Act since the *462 minimum tax is not based on net income.[9] Home Impressions’ motion for summary judgment is therefore denied. The Director’s cross-motion for summary judgment is granted. Home Impressions shall file tax returns and remit the minimum tax for the years in question.

 The Nexus Survey is a two-page questionnaire inquiring about the business activities of a company to determine whether the company is doing business in New Jersey.

 The Proposed Determination is a letter from the Nexus Audit Group of the Division of Taxation finding that Home Impressions was doing business in New Jersey because of its solicitation of sales through independent contractors within the State.

 The court went on the say that "[j]urisdiction in these circumstances may not be avoided merely because the defendant did not physically enter the forum State." Burger King, supra, 471 U.S. at 476, 105 S.Ct. at 2184, 85 L.Ed.2d at 543.

 Failure to meet the remaining three standards of the test set forth in Complete Auto Transit v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), has not been alleged in this case. Accordingly, this court will focus solely on the first standard (i.e. substantial nexus). See generally American Trucking Ass’ns, Inc. v. Scheiner, 483 U.S. 266, 107 S.Ct. 2829, 97 L.Ed.2d 226 (1987), and Container Corp. of America v. Franchise Tax Bd., 463 U.S. 159, 103 S.Ct. 2933, 77 L.Ed.2d 545 (1983).

 In Quill, the court failed to find a substantial nexus in the context of a use tax. 504 U.S. at 313, 112 S.Ct. 1904, 1913-14, 119 L.Ed.2d 91, 107. In the *457 present case, the court, having found no reason to conclude that a franchise tax should be analyzed in a different manner, will apply the standard in Quill, requiring Home Impressions to have a substantial nexus within the state. See J.C. Penney Nat’l Bank v. Johnson, 19 S.W.3d 831, 839 (Tenn.Ct.App.1999), cert. den., 531 U.S. 927, 121 S.Ct. 305, 148 L.Ed.2d 245 (2000). But see, Mayer & Schweitzer, Inc. v. Director, Div. of Taxation, 20 N.J.Tax 217, 231 (Tax 2002), citing Quill, supra, 504 U.S. at 307-08, 112 S.Ct. at 1910-11, 119 L.Ed.2d at 103 (noting that “concepts of nexus do not require physical presence in a state if a foreign corporation avails itself of the benefits of an economic market"); Bradley W. Joondeph, Rethinking Commerce Clause Nexus, 31 State Tax Notes 1001, 1003 (March 22, 2004) (concluding “that it might be time to discard the concept of Commerce Clause nexus”).

 The term "doing business” as defined in N.J.A.C. 18:7-1.9 includes:
[A]ll activities which occupy the time or labor of men for profit ... Whether a foreign corporation is doing business in New Jersey is determined by the facts in each case. Consideration is given to such factors as:
*459 1. The nature and extent of the activities of the corporation in New Jersey;
2. The location of its offices and other places of business;
3. The continuity, frequency and regularity of the activities of the corporation in New Jersey;
4. The employment in New Jersey of agents, officers and employees;
5. The location of the actual seat of management or control of the corporation.
[N.J.A.C. 18:7-1.9.]
See also Linear Films, Inc. v. Oklahoma, 876 P.2d 301, 307 (Okla.Ct.App.1994) (holding that, " '[d]oing business' need be no more than the act of solicitation by a corporation for franchise tax purposes. In contrast, income tax is a tax on the net income or profit derived from doing business.”)

 No inferences or conclusions should be made from the court's decision in this matter with regard to the non-”flat tax” aspects of the Act. No allegations have been made and, accordingly, this opinion does not address the nature or basis of any other tax imposed by the Act.

 The tax measured by net worth has since been replaced with a minimum flat tax. N.J.S.A. 54:10A-5, amended L. 1982 c. 55. See also, Hess Realty Corp. v. Director, Div. of Taxation, 10 N.J.Tax 63, 65 n. 1 (Tax 1988) (noting that the Legislature has phased-out the net worth provision of the Act).

 The court notes the Senate Minority View Statement to Pub.L. 86-272:
It should be borne in mind that the subject of this bill is a tax on net income or a tax measured by net income. We are not here considering licensing or franchise regulations...
Albert Gore, Eugene J. McCarthy, S.Rep. No. 86-658, 86th Cong. 1st Sess. (1959), U.S.Code Cong. & Admin.News 1959 at 2548, 2556.